Filing # 74283859 E-Filed 06/29/2018 09:03:07 AM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Hammocks Community Association Inc</u>
Plaintiff
vs.
<u>Underwriters at Lloyds</u>
Defendant

**II.    TYPE OF CASE**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
   ☐ Business governance
   ☐ Business torts
   ☐ Environmental/Toxic tort
   ☐ Third party indemnification
   ☐ Construction defect
   ☐ Mass tort
   ☐ Negligent security
   ☐ Nursing home negligence
   ☐ Premises liability – commercial
   ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
   ☐ Commercial foreclosure $0 - $50,000
   ☐ Commercial foreclosure $50,001 - $249,999
   ☐ Commercial foreclosure $250,000 or more
   ☐ Homestead residential foreclosure $0 – 50,000
   ☐ Homestead residential foreclosure $50,001 - $249,999
   ☐ Homestead residential foreclosure $250,000 or more
   ☐ Non-homestead residential foreclosure $0 - $50,000
   ☐ Non-homestead residential foreclosure $50,001 - $249,999

☐ Non-homestead residential foreclosure $250,00 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
   ☐ Malpractice – business
   ☐ Malpractice – medical
   ☐ Malpractice – other professional
☐ Other
   ☐ Antitrust/Trade Regulation
   ☐ Business Transaction
   ☐ Circuit Civil - Not Applicable
   ☐ Constitutional challenge-statute or ordinance
   ☐ Constitutional challenge-proposed amendment
   ☐ Corporate Trusts
   ☐ Discrimination-employment or other
   ☐ Insurance claims
   ☐ Intellectual property
   ☐ Libel/Slander
   ☐ Shareholder derivative action
   ☐ Securities litigation
   ☐ Trade secrets
   ☐ Trust litigation



**EXHIBIT**
tabbies
2

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.   **REMEDIES SOUGHT** (check all that apply):
    ☒  Monetary;
    ☐  Non-monetary declaratory or injunctive relief;
    ☐  Punitive

IV.   **NUMBER OF CAUSES OF ACTION:** (     )
    (Specify)

    <u>2</u>

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐  Yes
    ☒  No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒  No
    ☐  Yes – If "yes" list all related cases by name, case number and court:

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒  Yes
    ☐  No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Anthony M Lopez</u>    FL Bar No.: <u>13685</u>
    Attorney or party                      (Bar number, if attorney)

    <u>Anthony M Lopez</u>   <u>06/29/2018</u>
    (Type or print name)                     Date

*18-000172593*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

HAMMOCKS COMMUNITY ASSOCIATION INC

**CASE #:**   **2018-022154-CA-01**
**COURT:**   **CIRCUIT COURT**
**COUNTY:**   **MIAMI-DADE**
**DFS-SOP #:** 18-000172593

PLAINTIFF(S)

VS.

UNDERWRITERS AT LLOYD'S, LONDON

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Friday, July
20, 2018 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, July 25, 2018 to the
designated agent for the named entity as shown below.

        UNDERWRITERS AT LLOYD'S, LONDON
        EDWARD T SMITH
        MENDES & MOUNT 750 SEVENTH AVENUE
        NEW YORK, NY 10019

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent fillings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jimmy Patronis
Chief Financial Officer

ANTHONY LOPEZ
2601 SOUTH BAYSHORE DRIVE - SUITE 850
COCONUT GROVE, FL 33133

JJ1

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| DIVISION<br>X CIVIL<br>Q OTHER | SUMMONS | CASE NUMBER<br>2018-022154-CA-01 |
|---|---|---|
| PLAINTIFF(S)<br>HAMMOCKS COMMUNITY ASSOCIATION INC. | DEFENDANT(S)<br>UNDERWRITERS AT LLOYD'S, LONDON | CLOCK IN |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

You ARE COMMANDED to serve this summons and a copy of the *Complaint, Plaintiff's First Set of Interrogatories, and Plaintiff's First Request for Production* in this action on defendant:

## UNDERWRITERS AT LLOYD'S, LONDON
### c/o THE FLORIDA CHIEF FINANCIAL OFFICER as RA
### 200 E. GAINES STREET
### TALLAHASSEE, FLORIDA 32399-4201

Defendant is required to serve written defenses to the Complaint on Plaintiff's Attorney: Kaneily Valdes, Esq., Florida Bar No. 1003825, whose address 2601 S. Bayshore Drive, 18th Floor, Miami, Florida 33133 Telephone No.: 305/444-5969, Telefax No.: 305/444-1939, Email: Eservice@mellawyers.com, Secondary Email: Mellaw3@Mellawyers.com within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.



| CLERK OF COURTS | BY _____<br>DEPUTY CLERK | DATE |
|---|---|---|

AMERICANS WITH DISABILITIES ACT OF 1990
IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT OF 1990, PERSONS NEEDING A SPECIAL ACCOMMODATION TO PARTICIPATE IN THIS PROCEEDING SHOULD CONTACT THE ASA COORDINATOR, NO LATER THAN 7 DAYS PRIOR TO THE PROCEEDINGS AT 305/375-2006 (VOICE) OF 305/375-2007 (TDD)

COURT SEAL

[2070105/1]

RECEIVED AS STATUTORY REGISTERED AGENT on 20 July, 2018 and served on defendant or named party on 25 July, 2018 by the Florida Department of Financial Services

Filing # 74283859 E-Filed 06/29/2018 09:03:07 AM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

HAMMOCKS COMMUNITY ASSOCIATION
INC.,

          CASE NO.:

        Plaintiff,

v.

UNDERWRITERS AT LLOYD'S, LONDON,

        Defendant.

                            /

## COMPLAINT

    Plaintiff, HAMMOCKS COMMUNITY ASSOCIATION INC. (the "Insured"), hereby sues

Defendant, UNDERWRITERS AT LLOYD'S, LONDON (the "Insurance Company"), and alleges as

follows:

### PARTIES, JURISDICTION AND VENUE

    1.     This is an action for damages that exceeds Fifteen Thousand and 00/100 Dollars

($15,000.00), exclusive of interest, costs and attorney's fees and equitable relief by way of a

Declaratory Judgment Action.

    2.     The Insured is a Florida corporation qualified to do business in Florida and has, at all

times material hereto, been conducting business in Miami-Dade County, Florida..

    3.     The Insurance Company is a foreign entity qualified to do business in Florida and

has, at all times material hereto, been conducting business in Miami-Dade County, Florida.

    4.     Venue is proper in Miami-Dade County, Florida because the contract, which forms

the subject matter of this lawsuit, was executed in Miami-Dade County, Florida.

[2070182/1]

5.      All conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

## GENERAL ALLEGATIONS

6.      At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of B0507XEQ3052417 (the "Policy").  A true and correct copy of policy is attached hereto as Exhibit "A".

7.      The damaged property is located at 9020 Hammocks Boulevard, Miami, FL 33196 (the "Property").

8.      Pursuant to the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's Property for all risks unless specifically excluded by the terms of the Policy.

9.      On or about September 10, 2017, while the Policy was in full force and effect, the Property sustained a covered loss as a result of hurricane Irma (the "Loss").

10.     The Insurance Company assigned claim number 2000114977 to the Loss.

11.     The Insurance Company acknowledged that the Property sustained a covered Loss and offered payment.

12.     However, after diligent inspection of the Loss, it was obvious that the Property sustained covered damages greater than the damages acknowledged by the Insurance Company.

13.     As of the date of the filing of this lawsuit, the Insurance Company has failed to acknowledge that additional payment would be forthcoming and it has failed to adequately provide

[2070182/1]

coverage under the terms of the Policy. As a result of the foregoing, the Insurance Company has breached the Policy.

14.     The Insured has suffered and continues to suffer damages resulting from Insurance Company's breach of the Policy.

15.     The Insured has been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Section 627.428.

## COUNT I
## BREACH OF CONTRACT

16.     The Insured reincorporates paragraphs 1 through 15 as if fully set forth herein.

17.     It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

18.     The Insured has paid all premiums due and owing as contemplated by the Policy; thus, fully performing its obligations under the Policy.

19.     The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

20.     The Insurance Company has failed to: (i) provide coverage for the Loss under the terms of the Policy; and/or (ii) acknowledge that additional payment would be forthcoming; and/or (iii) make adequate payment of insurance proceeds to the Insured.  As a result of the foregoing, the Insurance Company has breached the Policy.

21.     As a direct and proximate result of the Insurance Company's breach of the Policy, the Insured has sustained damages.

[2070182/1]

WHEREFORE, the Insured respectfully requests that this Court enters judgment against the Insurance Company for damages, plus interest, court costs and reasonable attorney's fees pursuant to Section 627.428, Florida Statutes.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 28th day of June 2018.

Respectfully submitted,

**Marin, Eljaiek, Lopez & Martinez P.L.**
Counsel for the Insured
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
Telephone No. (305) 444-5969
Facsimile No. (305) 444-1939
Email: Eservice@mellawyers.com
Secondary Email: Mellaw3@mellawyers.com

By: *Kaneily A. Valdes*
Anthony M. Lopez, Esq.
  Florida Bar No. 13685
  Kaneily A. Valdes, Esq.
  Florida Bar No. 1003825

[2070182/1]



# CERTIFICATE OF INSURANCE

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

01/10/09
LSW1661

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

01/10/09
LSW1662



Equinox Underwriting (An Underwriting Division of Price Forbes & Partners Limited). Company Registered in England and Wales under company number 5734247 Registered Office at 2 Minster Court, Mincing Lane, London EC3R 7PD, England. Tel +44 (0)20 7204 8404. www.equinoxunderwriting.co.uk. Price Forbes & Partners is authorized and regulated to conduct general insurance business by the Financial Conduct Authority.

**EXHIBIT A**



# CERTIFICATE OF INSURANCE

**This Insurance** is effected with certain Underwriters at Lloyd's, London (not incorporated)

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain underwriters at Lloyd's, London whose name and the proportions underwritten by them can be ascertained from the office of said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters do hereby bind themselves each for his own part, and not for another, their heirs, executors and administrators.

**The Assured** is requested to read this certificate, and if not correct, return it immediately to the Correspondent for appropriate alteration.



**Equinox Underwriting** (An Underwriting Division of Price Forbes & Partners Limited). Company Registered in England and Wales under company number 5734247 Registered Office at 2 Minster Court, Mincing Lane, London EC3R 7PD, England. Tel +44 (0)20 7204 8404. www.equinoxunderwriting.co.uk Price Forbes & Partners is authorized and regulated to conduct general insurance business by the Financial Conduct Authority.



## CERTIFICATE PROVISIONS

**CONFORMITY OF TERMS:** For the purposes of the insurance the following terms are synonymous:

**Assured and Named Insured**

**Certificate and Policy**

**Underwriters, Insurers, and Company**

**US$ and USD**

**NMA, LMA, LPO, REF**

1.**Signature Required.** This Insurance shall not be valid unless signed by the Correspondent on the attached Declarations Page.

2.**Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those individual underwriters at Lloyd's, London whose names can be ascertained as hereinbefore set forth.

3.**Cancellation.** If this certificate provides for cancellation and this certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4.**Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

5.**Attached Conditions Incorporated.** This certificate is made and accepted subject to all the provisions, conditions and warranties set fort herein, attached or endorsed, all of which are to be considered as incorporated herein.

6.**Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium where applicable under the terms of cancellation.

### Short Rate Cancellation Table For Term of One Year

| Days Insurance in Force | Per Cent of One Year Premium | Days Insurance in Force | Per Cent of One Year Premium | Days Insurance in Force | Per Cent of One Year Premium | Days Insurance in Force | Per Cent of One Year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5 | 66-69 | 29 | 154-156 | 53 | 256-260 | 77 |
| 2 | 6 | 70-73 | 30 | 157-160 | 54 | 261-264 | 78 |
| 3-4 | 7 | 74-76 | 31 | 161-164 | 55 | 265-269 | 79 |
| 5-6 | 8 | 77-80 | 32 | 165-167 | 56 | 270-273 (9months) | 80 |
| 7-8 | 9 | 81-83 | 33 | 168-171 | 57 | 274-278 | 81 |
| 9-10 | 10 | 84-87 | 34 | 172-175 | 58 | 279-282 | 82 |
| 11-12 | 11 | 88-91(3 months) | 35 | 176-178 | 59 | 283-287 | 83 |
| 13-14 | 12 | 92-94 | 36 | 179-182(6 months) | 60 | 288-291 | 84 |
| 15-16 | 13 | 95-98 | 37 | 183-187 | 61 | 292-296 | 85 |
| 17-18 | 14 | 99-102 | 38 | 188-191 | 62 | 297-301 | 86 |
| 19-20 | 15 | 103-105 | 39 | 192-196 | 63 | 302-305(10 months) | 87 |
| 21-22 | 16 | 106-109 | 40 | 197-200 | 64 | 306-310 | 88 |
| 23-25 | 17 | 110-113 | 41 | 201-205 | 65 | 311-314 | 89 |
| 26-29 | 18 | 114-116 | 42 | 206-209 | 66 | 315-319 | 90 |
| 30-32(1 month) | 19 | 117-120 | 43 | 210-214 (7 months) | 67 | 320-323 | 91 |
| 33-36 | 20 | 121-124(4 months) | 44 | 215-218 | 68 | 324-328 | 92 |
| 37—40 | 21 | 125-127 | 45 | 219-223 | 69 | 329-332 | 93 |
| 41-43 | 22 | 128-131 | 46 | 224-228 | 70 | 333-337(11 months) | 94 |
| 44-47 | 23 | 132-135 | 47 | 229-232 | 71 | 338-342 | 95 |
| 48-51 | 24 | 136-138 | 48 | 233-237 | 72 | 343-346 | 96 |
| 52-54 | 25 | 139-142 | 49 | 238-241 | 73 | 347-351 | 97 |
| 55-58 | 26 | 143-146 | 50 | 242-246(8 months) | 74 | 352-355 | 98 |
| 59-62(2 months) | 27 | 147-149 | 51 | 247-250 | 75 | 356-360 | 99 |
| 63-65 | 28 | 150-153(5 months) | 52 | 251-255 | 76 | 361-366(12 months) | 100 |

Rules applicable to insurance with terms less than or more than one year:-

A.   If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for an insurance written for a term of one year.

B.   If this Policy has been in force for more than one year:

1.   Determine full annual premium as for insurance written for a term of one year.

2.   Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

3.   Add premium produced in accordance with items 1. And 2. To obtain earned premium during full period insurance has been in force.



7.  Regulation. Lloyds is regulated by the Financial Conduct Authority (the FCA) address as follows:
    **The Financial Conduct Authority**
    **25 The North Colonnade**
    **Canary Wharf**
    **London**
    **E14 5HS**

8.  **EQUINOX UNDERWRITING COMPLAINTS PROCEDURE**

    **HOW TO MAKE A COMPLAINT**

    Should you wish to make a complaint against Equinox Underwriting you may do so either in writing or verbally to the Compliance Officer at:

    Equinox Underwriting,
    2 Minster Court, Mincing Lane
    London,
    EC3R 7PD
    UK
    Telephone Number:          +44 (0) 207 204 8400
    Email:                     submissions@equinoxunderwriting.co.uk

9.  **EQUINOX UNDERWRITING'S COMMITMENT TO CUSTOMERS**

    Equinox Underwriting are committed to handling all customers' complaints received promptly, fairly and in line with regulatory guidelines.

    We deem a complaint to be any expression of dissatisfaction, whether oral or written, and whether justified or not, from or on behalf of an eligible complainant about the firm's provision of, or failure to provide, insurance.



**This Declaration Page is attached to and forms part of certificate provisions**

Previous No: Not Applicable   Authority Ref: B0507E16NQ00013 – 17.50%   Certificate No:B0507XEQ3052417
B0507E16NQ00010 – 17.50%
B0507E16NQ00014 – 17.50%
B0507E16NQ00011 – 17.50%
B0507E17NQ00017 – 6.00%
B0507E16NQ00018 – 6.00%
B0507E16NQ00019 – 6.00%
B0507E17NQ00012 – 6.00%
B0507E16NQ00021 – 6.00%

Name and Address Of
the Assured:                        **Hammocks Community Association Inc**
9020 Hammocks Boulevard
Miami
Florida 33196-1301
UNITED STATES

Effective From:        27th May 2017        to        27th May 2018

both days at 12:01 a.m. local standard time at the location of the property insured

Insurance is effective with certain                100 Percentage
UNDERWRITERS AT LLOYD'S, LONDON

| Amount: | Coverage: | Rate: | Premium: |
|---|---|---|---|
| As per the attached wording | | | USD 27,000 (100%) Annual, USA Hurricane Minimum Earned Premium Endorsement plus USD 35 Policy Fee |

Service of Suit may be made upon:     As per the attached LMA 5020 Clause.

Dated:        20 June 2017        **Equinox Underwriting**
**(An Underwriting Division of Price Forbes & Partners Ltd)**

**Prepared By: A. Stevenson**        By_____



## SCHEDULE

POLICY NUMBER:            B0507XEQ3052417

NAME AND ADDRESS
OF ASSURED:               **Hammocks Community Association Inc**
                          9020 Hammocks Boulevard
                          Miami
                          Florida 33196-1301
                          UNITED STATES

POLICY PERIOD:            12 Months at 27th May 2017 beginning and ending at
                          12.01 AM local standard time at the location of the property
                          insured

LOCATIONS INSURED:        The fifty (50) states comprising the United States of America,
                          its territories and possessions, the District of Columbia and
                          Puerto Rico, as per schedule of locations agreed by
                          Underwriters

SPLIT OF VALUES:          USD 3,065,630 (100%):-
BUILDINGS:                USD 1,531,070
BUSINESS PERSONAL
PROPERTY:                 USD    100,000
OUTDOOR/MISCELLANEOUS
PROPERTY:                 USD 1,434,560

SUM INSURED:              USD 3,065,630 any one occurrence

DEDUCTIBLES:              USD 5,000 any one occurrence in respect of All Perils
                          except:
                          5% of Total Insured Value in respect of Wind and Hail

PREMIUM:                  USD 27,000 (100%) Annual, USA Hurricane Minimum
                          Earned Premium Endorsement plus USD 35 Policy Fee

NOTIFICATION OF CLAIMS
OR COMPLAINTS:            Equinox Underwriting,
                          (An Underwriting Division of Price Forbes & Partners
                          Limited)
                          5th Floor, 2 Minster Court, Mincing Lane,
                          London, EC3R 7PD
                          VIA
                          Hull & Company LLC
                          1815 Griffin Road
                          Suite 300
                          Dania Beach
                          FL 33004

WARRANTY:                 Satisfactory Inspection Report at the Insureds own cost to
                          be supplied to Underwriters within 45 days of inception



# EQUINOX PROPERTY WORDING

**Insuring Clause**

SUBJECT TO THE EXCLUSIONS, CONDITIONS AND LIMITATIONS CONTAINED HEREIN, this Policy insures (1) the Property of the Assured which has been declared to and agreed by Underwriters and (2) the property of others which is (a) in the Assured's care, custody, and control, and (b) for which the Assured is legally liable, against RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE occurring during the period of this Policy.

**Excluded Causes Of Loss**

**THIS POLICY DOES NOT INSURE AGAINST:**

1) Wear, tear or gradual deterioration; Wet rot, dry rot or mold; Spoilage, decay or decomposition; Normal settling, shrinking or expansion in buildings, structures or foundations; Corrosion or rust; Erosion; Leakage; any other gradually occurring loss; or any loss which commenced prior to the inception of this Policy.

2) Loss or damage caused by error in design; Faulty workmanship; or Faulty or unsuitable materials. However, if Fire or Explosion results, then any loss or damage arising directly from that Fire or Explosion shall not be excluded hereunder.

3) Loss or damage caused by Moths, Termites or other insects; Vermin; Inherent vice or latent defect; Dampness or dryness of atmosphere; Condensation; Smog or fog; or extremes or changes in atmospheric temperature. However, if a cause not otherwise excluded by this Policy results, then any loss or damage arising directly from that cause shall not be excluded hereunder.

4) Loss or damage caused by Confiscation, Requisition, Detention, Legal or illegal occupation, Embargo, Quarantine, or any result of any order of Public or Government authority, which deprives the Assured of the use or value of its property, nor for loss or damage arising from acts of Contraband or Illegal transportation or Illegal trade.

5) Loss, damage or increased cost caused by enforcement of any ordinance or law regulating the use, reconstruction, repair or demolition of any property insured hereunder, nor any loss, damage, costs, expenses, fine or penalty which is incurred, or sustained by or imposed on the Assured at the order of any Governmental Agency, Court, or other Authority arising from any cause whatsoever.

   EXCEPT, this Policy shall not exclude damage to, or destruction of, said property by Civil Authority during a conflagration and for the sole purpose of retarding the same, PROVIDED that neither such conflagration nor such damage or destruction is caused or contributed to by War, Invasion, Hostilities, Acts of foreign enemies, Civil War, Revolution, Rebellion, Insurrection, Military or usurped power, Martial Law, or Warlike operations.

6) Loss or damage caused by Nuclear reaction, Nuclear radiation or Radioactive contamination however such Nuclear reaction, Nuclear radiation or Radioactive contamination may have been caused. NEVERTHELESS, if a fire arises directly or indirectly from Nuclear reaction, Nuclear radiation or Radioactive contamination, any loss or damage arising directly from that fire shall (subject to the provisions of this Policy) be covered EXCLUDING however all loss or damage caused by Nuclear reaction, Nuclear radiation or Radioactive contamination arising directly or indirectly from that Fire.



7)   Loss or damage caused by, resulting from, or coincident with, Earthquake, Tsunami or seaquake and/or volcanic eruption; regardless of any other event which contributes, or could have contributed, concurrently or in any sequence to the loss or damage.  HOWEVER, if Fire or Explosion results, then any loss or damage arising directly from the Fire or Explosion shall not be excluded hereunder.

8)   Loss or damage caused by or resulting from Flood:- meaning Rising water; Surface water; Waves; Tidal waves or tidal water; Overflow of streams, rivers, lakes, ponds, or other bodies of water; Or Spray from any of the foregoing; All whether driven by wind or not and regardless of any other event which contributes concurrently or in any sequence to the loss or damage.

9)   Loss or damage caused by backing up of Sewers and/or drains; or Seepage of any substance.

10)  Breakdown or derangement of Mechanical or Electric machinery and/or Explosion or Implosion of boilers and/or pressure and/or vacuum vessels, where such are owned and/or operated by the Assured; nor against the operation of any relief valve or other safety device.  However, if a cause not otherwise excluded by this Policy results, then any loss or damage arising directly from that cause shall not be excluded hereunder.

11)  Loss of use, delay or loss of markets; however caused or arising, and despite any preceding loss insured hereunder.

12)  Mysterious disappearance or Inventory shortage.

13)  Theft, fraud, or any kind of wrongful conversion or abstraction, whether committed alone or in  collusion with others by:-

   a)   The Assured or any Associate, Officer or Employee thereof;

   b)   Any Bailee or any Associate or Officer thereof;

   all while working or otherwise.

14)  Loss or damage caused by the Insolvency or any financial impairment of any person or organization to whom the Assured's property may be entrusted.

15)  Loss or damage caused by Processing, Renovation, Repairing or working upon.  However, if Fire or Explosion results, then any loss or damage arising directly from that Fire or Explosion shall not be excluded by this clause.

16)  Loss or damage to personal property caused by Shrinkage, Evaporation, Loss of weight, Leakage, Breakage of glass or other fragile articles, Marring, Scratching, Exposure to light, or Change in colour, texture or flavour; unless such loss or damage is caused directly by Fire or the combating thereof, Lightning, Windstorm, Hail, Explosion, Strikers, Riot or civil commotion, Aircraft, Vehicles, Breakage of pipes or apparatus, Sprinkler leakage, Vandalism or malicious mischief, Theft or attempted Theft.

17)  Loss or damage caused by Error in computer or machinery programming or from data processing media failure or breakdown.

18)  Electrical or magnetic injury to, or disturbance or erasure of electronic recordings, except by lightning.

19)  Loss or damage caused by Cessation, fluctuation or variation in, or insufficiency of, water, gas or electricity supplies.



20) Loss or damage caused by:

    a) theft
       or
    b) exposure to weather conditions

where any personal property insured is left in the open or not contained in buildings which are on permanent foundations and capable of secure storage.

**Property Excluded**

**THIS POLICY DOES NOT COVER:**

1) Land (including but not limited to land on which the property is located) or any other naturally occurring substance; water (other than water contained in plumbing or firefighting installations), or air.

2) Shafts, Mines, Tunnels, Wells, Ponds, Dams, Dykes, Wharves, Piers, Jetties, Embankments, Bulkheads, Earthen Structures and the like, and any manmade property in or under the ground (or earthen structures).

3) Driveways, Pavements, Curbing, Culverts, and Sidewalks.

4) Buildings or structures in process of construction or materials and supplies therefor.

5) Power Transmission or feeder lines not on the Assured's premises.

6) Any Building or structure, or property contained therein, while such Building or structure is vacant and/or unoccupied and/or inoperative for more than thirty days.

7) Neon Signs and automatic or mechanical and/or electric signs, awnings, glass or any ornamentation or lettering thereon.

8) Property in transit.

9) Property sold by or under encumbrance to the Assured after it leaves the custody of the Assured or an employee of the Assured.

10) Accounts, bills, currency, money, notes, securities, deeds, evidence of debt and valuable papers.

11) Aircraft or any other Aerial device, Watercraft, Vehicles designed for highway use, or Locomotives or Rolling Stock designed for Railroad use.

12) Animals, Plants and living things of all types.

13) Jewellery, Precious Stones & Furs.

14) Component Building Material that must be encapsulated, removed, or otherwise abated because its presence or release is a hazard to human health.

**Other Insurance**

This policy does not insure:-

a) Any loss or damage, or any property which is more specifically insured elsewhere

    nor

b) any loss or damage, or any property which but for the existence of this policy would be insured elsewhere

except, where such amounts insured elsewhere are less than the applicable limit or sub limit insured by this Policy, this Policy insures for the difference between the amounts insured elsewhere and the applicable limit or sub limit of this Policy, subject always to this Policy's deductible.



**Territorial Limits**   This Policy insures at the location(s) declared to and agreed by Underwriters.

**Sum Insured**   This Policy shall not cover for more than the sum(s) stated in the Schedule in respect of each loss occurrence nor for more than the aggregate amount(s) separately stated in the Schedule in respect of specified causes.

**Deductible**   Each loss occurrence shall be adjusted separately, and from the amount of each adjusted loss occurrence the applicable sum stated in the Schedule shall be deducted.

**Conditions**

1)   **DUE DILIGENCE**

The Assured shall use due diligence and do and concur in doing all things reasonable to avoid or diminish any loss of or damage to the property insured.

2)   **PROTECTION MAINTENANCE**

It is agreed that any protection provided for the safety of the insured property shall be maintained in good order throughout the currency of this Policy and shall be in use at all relevant times, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Underwriters without their consent.

3)   **VALUES LIMITATION AND MARGIN CLAUSE**

The premium for this Policy has been based on a statement of values declared to and agreed by Underwriters at the inception of this Policy and stated in the Schedule.

In conjunction with the normal adjustment procedure and/or any applicable valuation provisions contained herein, the maximum amount payable in any covered claim hereunder is limited to:

(1)   The value most recently reported by the Assured to Underwriters for the insured property that sustained the physical loss or damage covered by the claim; and

(2)   Where there is a time element claim arising from that physical loss or damage, the value most recently reported by the Assured to Underwriters for that exposure.

If the Assured demonstrates that the relevant value increased by up to 10% for the claimed property or time element interest since it was the last value reported to Underwriters, then the amount payable is correspondingly up to 110% of the reported value.

Notwithstanding the above, Underwriters liability shall never be more than any applicable sub-limit and/or the Policy limit of liability.

4)   **AUDIT**

The Underwriters may examine and audit the Assured's books and records at any time during the policy period and extensions thereof and within three years after the termination of this Policy, as far as they related to the subject matter of this insurance.



5) **VALUATION**

For the assessment of premium and for adjustment in the event of loss or damage insured under this Policy the basis of valuation shall be as follows:-

a) On finished goods, sold but not delivered, at the sale price less all unincurred charges.

b) On all other stock, whether finished goods or stock in process, at the value of raw materials and labour expended plus the proper proportion of overhead charges.

c) Property of others, at the amount for which the Assured is liable but in no event to exceed the replacement cost in accordance with the provisions of the Replacement Cost Endorsement attached hereto.

d) Tenants improvements and betterments, at the replacement cost in accordance with the provisions of the Replacement Cost Endorsement attached hereto if repaired or replaced by the Assured.  If repaired or replaced by others for the use of the Assured, there shall be no liability hereunder.

e) On documents not specifically excluded, at not exceeding the cost of blank material plus the cost of labour incurred by the Assured for transcribing or copying such records.

f) All other property at the replacement cost in accordance with the provisions of the Replacement Cost Endorsement attached hereto.

6) **NOTIFICATION OF CLAIMS, COMPLAINTS AND PROOF OF LOSS**

The Assured, upon knowledge of any occurrence likely to give rise to a claim or a complaint hereunder, shall give immediate written advice thereof to the person(s) or firm named for the purpose in the Schedule.

The Assured shall render a signed and sworn proof of loss within sixty (60) days after the occurrence of a loss (unless such period be extended by the written agreement of Underwriters) stating the time, place and cause of loss, the interest of the Assured and of all others in the Property, the sound value thereof and the amount of loss or damage thereto.

7) **ABANDONMENT**

There shall be no abandonment to the Underwriters of any property.

8) **EXAMINATION UNDER OATH**

If required by Underwriters, in the event of a claim being made under this Policy, the Assured; or, if a company or other body then the appropriate representatives; shall submit to examination under oath at such reasonable times and places as may be arranged.

9) **MISREPRESENTATION AND FRAUD**

This entire Policy shall be void if the Assured has wilfully concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance or the subject matter thereof, or if the Assured shall make any attempt to defraud either before or after a loss.



10) **SUBROGATION AND SUBROGATION WAIVER**

If the Underwriters become liable for any payment under this Policy in respect of loss or damage, the Underwriters shall be subrogated, to the extent of such payment, all the rights and remedies of the Assured against any party in respect of such loss or damage and shall be entitled at their own expense to sue in the name of the Assured. The Assured shall give to the Underwriters all such assistance in his power as the Underwriters may require to secure their rights and remedies and, at the Underwriters request, shall execute all documents necessary to enable Underwriters effectively to bring suit in the name of the Assured including the execution and delivery of the customary form of loan receipt.

The Underwriters hereon agree that this insurance shall not be invalidated should the Assured waive in writing, prior to loss affected thereby, any or all rights of recovery against any party for loss or damage occurring to the property described herein. Underwriters expressly waive subrogation against any subsidiary, parent, associated, or affiliated company of the Assured, BUT THE ABOVE WAIVERS SHALL NOT APPLY where the party otherwise protected thereunder is supplying or receiving goods or services for which a reward, recompense or consideration passes between the Assured and such other party.

11) **SALVAGE AND RECOVERIES**

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

12) **ARBITRATION**

If the Assured and Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Assured and Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.

The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

13) **SUIT LIMITATION CLAUSE**

No law suit or other action shall be taken against the Underwriters hereon, unless, as a condition precedent thereto, the Assured shall first have satisfied all the terms and conditions of this Insurance, nor unless commenced within 24 months after either the expiration or cancellation of this Insurance, whichever occurs first.



14) **INSPECTION**

The Underwriters shall be permitted, but not obliged, to inspect the Assured's property at any time. Neither the Underwriters' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Assured or others, to determine or warrant such property is safe.

15) **ASSIGNMENT**

Assignment or transfer of this Policy shall not be valid except with the written consent of Underwriters.

16) **CANCELLATION**

This Policy may be cancelled by the Assured at any time by written notice or by surrender of this Policy. This Policy may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than 30 days thereafter, except 10 days in respect of non payment of premium, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the short rate proportion of any minimum or deposit premium stipulated herein which ever is the greater.

If this insurance shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

Notwithstanding the foregoing, in the event of cancellation by the Assured, a minimum of 25% of the premium subject to the Hurricane Minimum Earned Premium Endorsement (as attached), whichever is the greater, is deemed fully earned at inception

17) **ADDITIONAL NAMED ASSURED, LOSS PAYEES AND MORTGAGE INTEREST:**

All third parties having a direct interest in property insured hereunder, shall automatically be Additional Named Assureds hereunder as their interests may appear.



All other third parties including, but not limited to, Loss Payees and Mortgagees who have an interest in the property insured hereunder, shall be automatically named as Loss Payees, and loss if any under this Policy shall be adjusted with the Assured and payable to the Assured and the Loss Payees as their interests may appear.

18) **PRESERVATION OF PROPERTY:**

In case of actual or imminent physical loss or damage of the type insured against by this Policy, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of property insured hereunder shall be added to the total physical loss or damage otherwise recoverable under this Policy and be subject to the applicable Deductible and without increase in the Limit provisions contained in this Policy.

## DEFINITIONS

**Loss Occurrence**

The words "loss occurrence" shall mean all individual losses or damage arising out of and directly occasioned by one event. However, if the following causes are insured by this Policy the duration and extent of any "loss occurrence" so defined shall be limited to:

a) 72 consecutive hours as regards a hurricane, a typhoon, windstorm, rainstorm, hailstorm and/or tornado.

b) 72 consecutive hours as regards earthquake, tsunami or seaquake, and/or volcanic eruption.

c) 72 consecutive hours and within the limits of one City, Town or Village as regards, riots, civil commotions and malicious damage.

d) 72 consecutive hours as regards any "loss occurrence" which included individual loss or losses from any of the causes mentioned in (a), (b) and (c) above.

and no individual loss from whatever insured cause, which occurs outside these periods or areas, shall be included in that "loss occurrence".

The Assured may choose the date and time when any such period of consecutive hours commences and if any event is of greater duration than the above period, the Assured may divide that event into two or more "loss occurrences", provided no two periods overlap and provided no period commences earlier than the date and time of the happening of the first recording individual loss to the Assured in that event during the policy period.

**Flood**

If Flood is insured by this Policy, Flood shall mean Rising water; Surface water; Waves; Tidal Waves or Tidal water; Overflow of streams, rivers, lakes, ponds, or other bodies of water; or spray from any of the foregoing; all whether driven by wind or not.

With respect to Flood, loss occurrence shall mean all losses, wherever occurring, which arise between the time of movement of water into, onto, or over the property insured hereunder and the receding of the same, regardless of the period of time so embraced; EXCEPT, no loss occurrence shall be deemed to commence earlier than the date and time of the happening of the first recorded individual loss to the Assured in that occurrence during the period of this Policy, nor to extend to beyond thirty days after the expiry of this Policy.



## REPLACEMENT COST ENDORSEMENT

**(Applicable to sub-paragraphs c), d) and f) of CONDITIONS 5) VALUATION)**

It is understood that in the event of loss or damage settlement shall be based upon the cost of repairing, replacing, or reinstating (whichever is the least) with material of like kind and quality without deduction for depreciation, subject to the following provisions:-

(a)     The repairs, replacement or reinstatement (all hereinafter referred to as "replacement") must be executed with due diligence and dispatch;

(b)     Until replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to the actual cash value at the time of loss.

The Underwriters liability for loss under this Policy including this Endorsement shall not exceed the smallest of the following amounts:-

i)      the amount of the Policy applicable to the destroyed or damaged property,

ii)     the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use,

iii)    the amount actually and necessarily expended in replacing said property or any part thereof.



**U.S.A.**

LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

seepage and/or pollution and/or contamination exclusion

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

(a) any loss, damage, cost or expense, or

(b) any increase in insured loss, damage, cost or expense, or

(c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

(a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

(b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

Cont...d/



DEBRIS REMOVAL ENDORSEMENT

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following:

1.  In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the Sum Insured, subject to the limitations and method of calculation below, and to all the other terms and conditions of the Policy, costs or expenses;

    (a) which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

    (b) of which the Assured becomes aware and advises the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction.

2.  In calculating the amount, if any, payable under this Policy for loss where costs or expenses for removal of debris are incurred by the Assured (subject to the limitations in paragraph 1 above):

    (a) the maximum amount of such costs or expenses that can be included in the method of calculation set out in (b) below shall be the greater of $25,000 (twenty-five thousand dollars) or 10% (ten percent) of the amount of the Damage or Destruction from which such costs or expenses result; and

    (b) the amount of such costs or expenses as limited in (a) above shall be added to:

        (i)  the amount of the Damage or Destruction; and

        (ii) all other amounts of loss, which arise as a result of the same occurrence, and for which Underwriters hereon also agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay; and

    the resulting sum shall be the amount to which any deductible or underlying amount to which this Policy is subject and the limit (or applicable sub-limit) of this Policy, shall be applied.

NMA2340



**ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)**

This Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

(a) the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

(b) any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

NMA2802



### U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
### NOT PURCHASED CLAUSE

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

LMA5219

12 January 2015



## ELECTRONIC DATA ENDORSEMENT B

1. **Electronic Data Exclusion**

   Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

   a)   This Policy does not insure, loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

   ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software, and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

   COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

   b)   However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

   Listed Perils
   Fire
   Explosion

2. **Electronic Data Processing Media Valuation**

   Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

   Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the ELECTRONIC DATA from back-up or from originals of a previous generation.  These costs will not include research and engineering nor any costs of recreating, gathering or assembling such ELECTRONIC DATA.  If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

**NMA 2915**



## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this Policy or any Endorsement thereto it is agreed that this Policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

(1)     war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

(2)     any act of terrorism.
        For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this policy, the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

NMA2918
08/10/2001



### MICROORGANISM EXCLUSION
#### (Absolute)

This Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

> mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This Exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

This Exclusion replaces and supersedes any provision in the Policy that provides insurance, in whole or in part, for these matters.

LMA 5018
14/09/2005
Form approved by Lloyd's Market Association



### BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

NMA2962
06/02/03
Form approved by Lloyd's Market Association [Non-Marine]



### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-PHYSICAL DAMAGE-DIRECT

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused *NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

*NOTE - If Fire is not an insured peril under this policy the word from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

NMA1191



## PREMIUM PAYMENT CLAUSE

The (Re)Insured undertakes that premium will be paid in full to underwriters within 45 days of inception of this policy (or, in respect of instalment premiums, when due).

If the premium due under this policy has not been so paid to Underwriters by the 45th day from the inception of this policy (and, in respect of instalment premiums, by the date they are due) Underwriters shall have the right to cancel this policy by notifying the (Re)Insured via the broker in writing.  In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that Underwriters shall give not less than 10 days prior notice of cancellation to the (Re)Insured via the broker.  If premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the policy shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Underwriter (and Agreement Parts if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to Underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.

LSW3000



## ASBESTOS ENDORSEMENT

A.  This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the period of insurance by one of these Listed Perils:

> fire; explosion; lightning; windstorm; hail; direct impact of vehicle, aircraft or vessel; riot or civil commotion, vandalism or malicious mischief; or accidental discharge of fire protective equipment.

This coverage is subject to each of the following specific limitations:

1.    The said building or structure must be insured under this Policy for damage by that Listed Peril.

2.    The Listed Peril must be the immediate, sole cause of the damage of the asbestos.

3.    The Assured must report to Underwriters the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos.  However, this Policy does not insure any such damage first reported to the Underwriters more than 12 (twelve) months after the expiration, or termination, of the period of insurance.

4.    Insurance under this Policy in respect of asbestos shall not include any sum relating to:

    (i)    any faults in the design, manufacture or installation of the asbestos;

    (ii)    asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

B.  Except as set forth in the foregoing Section A, this Policy does not insure asbestos or any sum relating thereto.

LMA 5019
14/09/2005
Form approved by Lloyd's Market Association



## DEMOLITION AND INCREASED COST OF CONSTRUCTION EXTENSION

In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in force at the time of loss, regulating the construction, repair, or use of property Underwriters shall be liable for subject to a sublimit 10% of Total Building Values.

    A.   The cost of demolishing the undamaged property;

    B.   The Proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

    C.   Increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  However, Underwriters shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

All other terms and conditions remain unchanged.



### SERVICE OF SUIT CLAUSE (U.S.A.)

This Service of Suit Clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration provision within this Policy. This Clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this contract of insurance (or reinsurance).

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

Mendes & Mount of 750 Seventh Avenue, New York, NY 10019-6829*

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

*In respect of an Assured domiciled in California the following will apply instead – Eileen Ridley, FLWA Service Corp. c/o Foley & Lardner LLP, 555 California Street, Suite 1700, San Francisco, CA 94104-1520.

14/09/2005
LMA5020
Form approved by Lloyd's Market Association

The applicable law will be determined by the court of competent jurisdiction as referred to in LMA 5020



### SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.   The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

### SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA 3100
(09/10)



## USA HURRICANE MINIMUM EARNED PREMIUM ENDORSEMENT

The following terms and conditions will apply to this policy where the peril of windstorm is included:

1.  If you cancel this policy, remove a location or reduce the amount of Insurance on a location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico in the states of North Carolina thru to Texas inclusive, and coverage existed any time during the period of June 1st to November 1st, the amount of premium we will return will be the Unearned Premium for the location.  The Unearned Premium is the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor noted below. The location premium is the 100% annual rate multiplied by the location value as scheduled in the most current Statement of Values on file with Underwriters.

<div align="center">

1 year Policy

| Days Policy In Force | Unearned Factor |
|---|---|
| 001 to 180 | 25% |
| 181 to 210 | 20% |
| 211 to 240 | 15% |
| 241 to 270 | 10% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

</div>

2.  The provisions of this endorsement replace any short rate provisions stipulated in this policy for all locations that are within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico in the states of North Carolina thru to Texas inclusive, and coverage existed any time during the period of June 1st to November 1st.

Notwithstanding the foregoing 25% minimum premium is deemed to be earned at inception.

All other terms and conditions remain unchanged



## <u>INSPECTION REPORT APPROVAL</u>

IMPORTANT NOTE, PLEASE READ CAREFULLY FAILURE TO TAKE ACTION REQUESTED BY UNDERWRITERS MAY RESULT IN TERMINATION OF COVERAGE.

The cover provided hereon is subject to underwriters receipt and approval of an up to date inspection report no later than 45 days from inception, which report shows no material change in the risk and contains no recommendations for material repairs which would change underwriters evaluation of the subject risk. Should the inspection reflect any material change in the risk or recommendations for material repairs underwriters may cancel the risk or request remedial work to subject premises be completed within 30 days. Failure to comply with such request may result in the cancellation of the policy.



## INSURANCE REQUIREMENTS AND THE DUTY OF DISCLOSURE

**Material information and fair presentation**

We rely on you (the broker) to provide us with the information about the (re)insured's business and the risks to be (re)insured to enable us to arrange (re)insurance to meet their needs. The (re)insured must ensure that the information provided to us is complete, accurate and discloses all material facts and/or circumstances to enable us to make a "fair presentation" of the (re)insured's business and the risks on their behalf to (re)insurers.

A material fact and/or circumstance is a fact or circumstance that the (re)insured knows, or ought reasonably to know, which would influence any prudent (re)insurer as to whether to underwrite the policy or the terms and conditions to impose.

**A fair presentation** is one which:

- Is clear and accessible to (re)insurers
- Discloses all material facts and/or circumstances known to the (re)insured or which ought reasonably to be known to the (re)insured
- Discloses anything which is special or unusual about the risk to be (re)insured which includes anything that would make a loss more probable or more severe
- Has been prepared after the (re)insured has made and documented, a reasonable search for material facts and/or circumstances available to them whether held within their organisation, or held by any external third party(ies) who may know of material facts and/or circumstances. This will include (but is not limited to) those members of the (re)insured's organisation who play significant roles in the organisation's activities (and/or the specific risks in question).

If you or the (re)insured is are in any doubt as to what constitutes a material fact and/or circumstance, or a fair presentation, or if you or the (re)insured are uncertain about the scope of the reasonable search that is required to be undertaken, please discuss with us further. Failure to make a fair presentation may result in the (re)insurer declining a claim, reducing claims, imposing new terms and/or charging additional premium.

**Warranties**

Warranties are important provisions contained within the contract of (re)insurance that must be complied with at all times. A breach of warranty may discharge (re)insurers' liability to pay claims. It is important that you read all contractual documentation carefully and if you are unsure whether or not the (re)insured is able to comply, please contact Equinox Underwriting in the first instance.

**Conditions Precedent**

Please take note of any conditions precedent that appear in the contract of (re)insurance. If a condition precedent to the validity of this contract of (re)insurance or the commencement of the contract of (re)insurance is not complied with, (re)insurers liability to pay a claim may not have been established. If a condition precedent to the (re)insurers' liability under this contract of (re)insurance is not complied with, the (re)insurers may not be liable for the loss in question. It is important that you read all contractual documentation carefully and if you are unsure whether or not the (re)insured is able to comply, please contact Equinox Underwriting in the first instance.

**Subjectivities**

If the cover provided is granted by (re)insurers subject to a certain requirement, failure to comply may result in cover not being granted. Please contact Equinox Underwriting immediately if you are unsure as to the meaning of a subjectivity, or the (re)insured is unable to comply.

Please read this Certificate of Insurance carefully and advise us immediately if it does not meet with your requirements.

There is, as you know, a legal ruling in certain States (which may apply to this Insurance) that Insurers who do not issue specific notice of cancellation at expiry are deemed to have offered renewal.  As a result, we are obliged by Insurers hereon to give precautionary notice of their intention not to renew this Insurance when it expires at 27th May 2018

Please understand that this notice is issued by Insurers solely to comply with the law. We will naturally look forward to negotiating renewal terms with them as soon as we receive the usual underwriting information.



## SCHEDULE OF LLOYD'S UNDERWRITERS

**AUTHORITY
REFERENCE:**

| | | |
|---|---|---|
| **B0507E16NQ00013** | AML 2001 | 100.0000% of 17.5000% |
| **B0507E16NQ00010** | QBE 1886 | 100.0000% of 17.5000% |
| **B0507E16NQ00014** | AMA 1200 | 100.0000% of 17.5000% |
| **B0507E16NQ00011** | XLC 2003 | 100.0000% of 17.5000% |
| **B0507E17NQ00017** | DUW 1729 | 100.0000% of  6.0000% |
| **B0507E16NQ00018** | FDY 0435 | 100.0000% of  6.0000% |
| **B0507E16NQ00019** | TAL 1183 | 100.0000% of  6.0000% |
| **B0507E17NQ00012** | BAR 1955 | 100.0000% of  6.0000% |
| **B0507E16NQ00021** | SII 1945 | 100.0000% of  6.0000% |
| | **GRAND TOTAL** | **100.0000%** |

Filing # 74283859 E-Filed 06/29/2018 09:03:07 AM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

HAMMOCKS COMMUNITY ASSOCIATION
INC.,
                                       CASE NO.:

       Plaintiff,

v.

UNDERWRITERS AT LLOYD'S, LONDON ,

       Defendant.

_____/

### PLAINTIFF'S FIRST SET OF INTERROGATORIES

      Plaintiff, HAMMOCKS COMMUNITY ASSOCIATION INC. (the "Insured"), pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, propounds the following First Set of Interrogatories upon Defendant, UNDERWRITERS AT LLOYD'S, LONDON  (the "Insurance Company"), to be answered in writing, under oath, within the time specified.

### CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: UNDERWRITERS AT LLOYD'S, LONDON c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, on this 28th day of June 2018.

**Marin, Eljaiek, Lopez & Martinez P.L.**
Counsel for the Insured
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
Telephone No. (305) 444-5969
Facsimile No. (305) 444-1939
Email: Eservice@mellawyers.com
Secondary Email: Mellaw3@mellawyers.com

By: _*Kaneily A. Valdes*_
  Anthony M. Lopez, Esq.
    Florida Bar No. 13685
    Kaneily A. Valdes, Esq.
    Florida Bar No. 1003825

## DEFINITIONS AND INSTRUCTIONS

1.      Insert your answers in the space provided following each question. If additional space is needed, so indicate in the space provided, prepare your answers on a separate paper, and attach the additional paper to your answers.

2.      Separately answer each interrogatory, and each subsection of each interrogatory. The term "you" and "your" means the party or parties to which this request is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, accountants, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

3.      The terms "Insurance Company" or "Defendant" means the defendant in this action to which these Interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on their behalf. The terms "Insurance Company" or "Defendant" also includes the party's divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and accountants as well as each partnership in which it is a partner, and includes any other person, acting or purporting to act on its behalf.

4.      The terms "you" and "your" mean the party or parties to which these interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on its behalf.

5.      The "Complaint" means the Complaint filed by the Insured in this action.

6.      The term "Claim" means any statement, concept, assertion, idea, allegation, fact, law, rule, theory, observation, cause of action, or principle whatsoever, based upon which Plaintiff

demands that she has suffered damages, or has a right to payment, as the result of any act or omission of Defendant.

7.      The terms "person" or "persons" mean any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, and group of natural persons or other entity, and includes any other person acting on behalf of a person.

8.      The term "contract" means any promise, or set or promises, which creates an obligation to do or not do a particular thing where there was meeting of the minds on a given proposition and an understanding and intention between the parties.

9.      The term "communication" means any information given, whether oral or written; any oral or written statement, conference, consultation, dialogue, colloquy, discussion, conversation, agreement, the sharing of knowledge by one with another, bargaining preparatory to making a contract or any expression of any kind.

10.      The term "document" means and includes any kind of written, typed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working papers, transcriptions, agendas, reports, recordings of telephone or other conversations, of interviews, of conferences or of

meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements, schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had access.  "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

11.     The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

12.     As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

13.     The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive.  The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

14.     The terms "refer" or "relate to" mean setting forth, pertaining to, memorializing,

constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

15.     The term "locate" or "location" means to state the present whereabouts of each

Document and to identify the persons having possession, custody or control thereof.

16.     The term "to date" shall mean the date on which you answer these interrogatories.

17.     The term "including" means "including but not limited to".

18.     "Relating to" or "relevant to" means embodying, pertaining to, concerning, involving,

constituting, comprising, reflecting, discussing, evidencing, referring to, consisting of, or having any

logical or factual connection whatever with the subject matter in question.

19.     The term "Identify," when used with reference to a natural person, means state:

(a)     his full name and address (or, if the present address is not known, his last
        known address).

(b)     the full name and address of each of his employers, each corporation of which
        he is an officer or director and each business in which he is a principal.

(c)     his present (or, if the present is not known, his last known) position and his
        position or positions at the time of the act to which the interrogatory answer
        relate, and

(d)     such other information sufficient to enable Plaintiff to identify the person.

20.     "Identify," when used with reference to any entity other than a natural person, means:

(a)     state the full name of the entity, the type of entity (e.g., corporation,
        partnership, etc.), the address of its principal place of business, its principal
        business activity, and if it is a corporation, the jurisdiction under the laws of
        which it has been organized and the date of such organization.

21.     "Identify," when used with reference to a document or written communication, means

state:

(a)     its nature (e.g., letter, telegram, floppy disc, computer printout, memorandum,

[2070216/1]                    Page 6 of 17

chart, report or study), date, author, date and place of preparation and the name and address of each addressee, if there is an addressee;

(b)    the identity of each signer to the document or communication;

(c)    the title or heading of the document or communication;

(d)    its substance;

(e)    its present (or, if the present is not known, the last known) location and custodian.

(f)    the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (I) respondent and (ii) any other person (naming such other person) who, at any time, either received, transmitted or otherwise disposed of such document or communication and each copy thereof;

(g)    the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

22.    "Identify," when used with reference to an oral transaction or oral communication, means state:

(a)    its nature (e.g., telephone call, conversation in person, etc.)

(b)    the date and place thereof.

(c)    the identity and address of each person participating therein, present during or witness to any part thereof.

(d)    identify each document in which such transaction or communication was recorded, described or referred to.

23.    "Identify" when used with reference to a lawsuit means state:

(a)    the caption of each lawsuit;

(b)    the court in which the lawsuit was filed;

(c)     the case number;

(d)     identify the parties, and

(e)     a brief summary of the nature of the claim or charge.

24.     "Identify" when used with reference to an administrative claim or charge means state:

(a)     identify the claimant or charging party;

(b)     the administrative office were filed;

(c)     the number assigned to identify the claim or charge, and

(d)     a brief summary of the nature of the claim or charge.

25.     "Identify," when used in any other context that is herein above set forth, means to describe the act, word, situation, event, etc. (and/or conduct, course of action of any nature whatsoever, including without limitation any failure to act, to engage in any conduct or to pursue any course of action), to be identified as fully as possible and identify each document or communication or act in which such act, word, situation, event, conduct or course of action, etc., was recorded, refers or relates to each answer, forms all or part of the basis for an answer; and/or corroborates and answer.

26.     You may, in lieu of identifying any Document or written communication, attach a true copy of each Document as an exhibit to the answers to these interrogatories.  On each occasion in which you choose to attach a Document as your answer to an interrogatory, identify the portion of the Document that answers the interrogatory.

27.     Identify each Document produced pursuant to an interrogatory by the paragraph number of the interrogatory in response to which it is produced and by the file from which the document was produced.

28.     If any of the information furnished in an answer to all or part of an interrogatory is not within your personal knowledge, identify each person who has personal knowledge of the information furnished in such answer and each person who communicated to you any part of the information furnished.

29.     If the answer to all or any part of the interrogatory is not presently known or available to you, include a statement to that effect, furnish the information now known or otherwise available to you, and respond to the entire interrogatory by supplemental answer, in writing, under oath, within ten days from the time the entire answer becomes known or available to you, but. in no event less than five days prior to trial.

30.     If you contend that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any one of these interrogatories or any subpart thereof, then in response to the appropriate interrogatory or subpart:

(a)     set forth all such information that is available to you without undertaking what you contend to be an unreasonable burden;

(b)     state with particularity the grounds on which you contend that additional efforts to obtain such information would be unreasonably burdensome; and

(c)     describe with particularity the efforts made by you to secure such information, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such information, including the duration of time spent and nature of work done by each person.

31.     Unless your response to an interrogatory is complete when made, these interrogatories are continuing insofar as you are required to promptly make further or supplemental answers if new

information is discovered and/or acquired by you between the date of your initial answer and any time thereafter.

32.     If you claim in response to any request for production that any requested document is "privileged" and not subject to discovery, you shall so state expressly and, in addition, shall provide a privilege log, describing the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

33.     If all of the information furnished in answer to all or part of an interrogatory is not within the personal knowledge of the affiant, identify each person to whom all or part of the information furnished is a matter of personal knowledge and each person who communicated to the affiant any part of the information furnished.

34.     To the extent precise and complete information cannot be furnished, such information as is available shall be supplied, together with an estimate of the precise and complete information. Where such an estimate is given, the method employed in making the estimate shall be described.

## INTERROGATORIES

      1.     Please state the name, title, current business address, and phone number of all persons answering or assisting with the answering of this set of interrogatories.

      2.     Please state the date that the Insurance Company first received notice from the Insured for a claim of benefits under the Policy for property damages as described in the Complaint in this lawsuit.

3.     In reference to the Insured's demand for appraisal, please state:

     a.     The date the decision to not proceed with appraisal of the claim was made.

     b.     Identify each person who participated in the decision to not proceed with appraisal of the Insured's claim.

     c.     Describe each and every fact upon which you relied in forming the basis for your decision not to proceed with appraisal of the Insured's claim.

     d.     Identify each document sent by the Insurance Company to the Insured detailing the reasons why the Insurance Company chose not to proceed to appraisal of the Insured's claim.

e.      State the location, including, page(s), line(s) and paragraph number(s), and the exact language contained in the Policy, which you used to base your decision to not proceed with appraisal of the Insured's claim.

4.      Identify each person, by name, address, phone number and position, whom on behalf of the Insurance Company, inspected the Insured Property in reference to the claim for benefits under the Policy, including his or her field of expertise and the date of each inspection.

5.    Identify each written estimate for repair or replacement, including the amount set forth in each estimate, which has been provided to the Insurance Company by the Insured in reference to the Insured's claim for benefits under the Policy.

6.    Identify all persons (other than the Insurance Company) believed or known by you, your agents or attorneys to have knowledge concerning any of the issues raised by the pleadings, specifying the subject matter about which witnesses have knowledge and state whether you have obtained any statements (oral, written or recorded) from any of said witnesses, list the dates any such witness statements were taken, by whom any such witness were taken and who has the present possession, custody and control of any such statements.

7.      Identify all persons who, on the Insurance Company's behalf, have in any way participated in the investigation, evaluation, adjusting or handling of the claim involved hereto. Please specify the nature of the participation for each and every such person and give the time period during which they participated.

8.      Refer to the page and line of any and all written guidelines you used in the claims handling process that justify the investigation and claims handling such as was conducted with regards to the claims presented by the Insured.

9.      Please describe all requests made by the Insurance Company upon the Insured (i.e., requests for examination under oath, information, documents, sworn proofs of loss, etc.,) in reference to this claim and the dates made.

10.     With reference to each of your affirmative defenses raised in the lawsuit, please describe each and every fact upon which you rely to substantiate such affirmative defense, including identification of all witnesses to each such fact.

[2070216/1]                       Page **16** of **17**

IN WITNESS WHEREOF, the Insurance Company has executed the foregoing answers to interrogatories and states that same are true and correct to the best of the undersigned's knowledge and belief.

UNDERWRITERS AT LLOYD'S, LONDON

By: _____

Title: _____

STATE OF FLORIDA          }
                          }
COUNTY OF _____ }

BEFORE ME, the undersigned authority, personally appeared _____, who is personally known to me or who has produced _____ as identification, being first duly sworn according to law, deposes and says that he executed the foregoing Answers to Plaintiff's First Set of Interrogatories and that they are true and correct to the best of his/her knowledge and belief.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of my office; in the County and State last aforesaid, this _____ day of _____2018.

Filing # 74283859 E-Filed 06/29/2018 09:03:07 AM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

HAMMOCKS COMMUNITY ASSOCIATION
INC.,

CASE NO.:

        Plaintiff,

v.

UNDERWRITERS AT LLOYD'S, LONDON,

        Defendant.

_____/

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, HAMMOCKS COMMUNITY ASSOCIATION INC. (the "Insured"), pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, hereby request that Defendant, UNDERWRITERS AT LLOYD'S, LONDON (the "Insurance Company"), make available for inspection and duplication, in response to each numbered paragraph, all documents specified herein which are in its possession, custody or control or in the possession, custody or control of its agents, accountants or attorneys. Defendant is requested to make such production within the time period prescribed either by the Florida Rules of Civil Procedure or by order of the Court, at the offices of **Marin, Eljaiek, Lopez & Martinez P.L., 2601 South Bayshore Drive, 18th Floor, Coconut Grove, Florida 33133.**

I.  **DEFINITIONS AND INSTRUCTIONS**

    1.    The terms "you", "your(s)", "yourselves", "defendant", and/or "Insurance Company" means the party or parties to which this request is addressed, and any agents, representatives, attorneys or other persons acting or purporting to act, on its behalf.

2.      The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons, or other entity.

3.      The "Complaint" means the Complaint filed by the Insured in this action.

4.      The term "document" shall mean any written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records).

5.      The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

6.      The term "Insurance Company" shall refer to the Defendant in this action, its affiliates, subsidiaries, predecessors, successors, agents, attorneys and/or anyone else acting in its behalf.

7.      The term "communication(s)" means every manner or means of disclosure, transfer or exchange of information, whether in person, by telephone, mail, personal delivery or otherwise.

8.      As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall include each of the other genders.

9.      The terms "and", "as well as" and "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive.  The term "all" means "any and all."  The terms "each" and "every" means "each and every," the term "including" means "including without limitation."

10.     The terms "referring to" or "relating to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

11.     The terms "locate" or "location" means to state the present whereabouts of each document and to identify the person(s) having possession, custody or control thereof.

12.     The term "to date" shall mean the date on which you respond to this request.

13.     When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

14.     When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

[2070299/1]                     Page 3 of 7

15.     In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

16.     The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside their scope.

17.     If you claim that the attorney/client or any other privilege or the attorney's work product doctrine applies to any document, the production of which is called for by these requests, then for each such document, state its date, subject matter, author(s), recipient(s), present custodian and all past custodians, and such additional information concerning the claim of privilege or work product doctrine as will permit the adjudication of the propriety of the claim.

18.     If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

(a)     furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;

(b)     state with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and

(c)     describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each

person.

19.     Unless otherwise indicated, all requests include the time period from the date of the Loss through the date you respond to this request.

20.     The term "Insured" shall refer to the Plaintiff(s), affiliates, predecessors, successors, agents, attorneys and/or anyone else acting in their behalf.

## II.     <u>LOST/DESTROYED DOCUMENTS</u>

If any document to be produced was, but is no longer, in your possession, custody or control and/or has been destroyed or is otherwise incapable of production or state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; (d) if not destroyed, the reason why the document is incapable of production; and (e) the subject matter of the document.

## III.     <u>DOCUMENTS REQUESTED</u>

1.     A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insured, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

2.     Each and every timesheet, log and all other documents reflecting time spent by the Insurance Company at the Property.

3.     Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans to visit the Property on behalf of the Insurance Company.

4.     Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insured's loss as described in the Complaint.

[2070299/1]                              Page **5** of 7

5.     Any and all correspondence or written communications from the Insured, to the Insurance Company which in any manner pertains to the Insured's loss as described in the Complaint.

6.     Any and all photographs taken by the Insurance Company of the Property.

7.     All documents containing information regarding a statement by the Insured at any time during the Insurance Company's handling of the Insured's loss, including adjuster notes, claim reports, interoffice memorandum, tape recordings and any transcripts or written statements from the Insured.

8.     Any and all bills or estimates for repairs to the Property submitted to the Insurance Company by the Insured.

9.     Any and all checks paid to, or on behalf of the Insured, representing insurance coverage payment(s) for the loss.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail

to: UNDERWRITERS AT LLOYD'S, LONDON c/o The Florida Chief Financial Officer as RA, 200

E. Gaines Street, Tallahassee, Florida 32399-4201, on this 28th day of June, 2018.

> **Marin, Eljaiek, Lopez & Martinez P.L.**
> Counsel for the Insured
> 2601 South Bayshore Drive, 18th Floor
> Coconut Grove, Florida 33133
> Telephone No. (305) 444-5969
> Facsimile No. (305) 444-1939
> Email: Eservice@mellawyers.com
> Secondary Email: Mellaw3@mellawyers.com
>
> By: *Kaneily A. Valdes*
>   Anthony M. Lopez, Esq.
>     Florida Bar No. 13685
>     Kaneily A. Valdes, Esq.
>     Florida Bar No. 1003825

[2070299/1]                         Page 7 of 7

Filing # 75840431 E-Filed 08/01/2018 03:37:41 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

HAMMOCKS COMMUNITY                   Case No: 2018-022154-CA-01
ASSOCIATION, INC.
     Plaintiff,

Vs.

UNDERWRITERS AT LLOYDS,
LONDON,
     Defendant.
_____/

## NOTICE OF APPEARANCE AS CO-COUNSEL

PLEASE TAKE NOTICE that the undersigned hereby enters his appearance as counsel

for Defendant, HAMMOCKS COMMUNITY ASSOCIATION, INC., in the above styled case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was served via Florida E-Portal to

Anthony M. Lopez, Esq., at aml@mellawyers.com on this 31st day of July 2018.

<div style="margin-left:40%">

Respectfully Submitted By:
/s/ Yudany Fernandez, Esq.
FL Bar No: 0194042
Alfaro & Fernandez, P.A.
5801 NW 151 ST SUITE 305
Miami Lakes, FL 33014
(305) 821-5255 Tel.
(305) 821-5256 Fax.
Primary Service Email address
law@alfarofernandez.com

</div>

Filing # 75811171 E-Filed 08/01/2018 11:11:24 AM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

HAMMOCKS COMMUNITY                    Case No: 2018-022154-CA-01
ASSOCIATION, INC.
      Plaintiff,

Vs.

UNDERWRITERS AT LLOYDS,
LONDON,
      Defendant.
_____/

### NOTICE OF APPEARANCE AS CO-COUNSEL

    PLEASE TAKE NOTICE that the undersigned hereby enters his appearance as counsel

for Plaintiff, HAMMOCKS COMMUNITY ASSOCIATION, INC., in the above styled case.

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that the foregoing document was served via Florida E-Portal to

Anthony M. Lopez, Esq., at aml@mellawyers.com on this 31st day of July 2018.

Respectfully Submitted By:
/s/ Yudany Fernandez, Esq.
FL Bar No: 0194042
Alfaro & Fernandez, P.A.
5801 NW 151 ST SUITE 305
Miami Lakes, FL 33014
(305) 821-5255 Tel.
(305) 821-5256 Fax.
Primary Service Email address
law@alfarofernandez.com

Filing # 77417165 E-Filed 09/04/2018 06:04:56 PM

IN THE CIRCUIT COURT IN AND FOR THE ELEVENTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR MIAMI-DADE COUNTY

HAMMOCKS COMMUNITY ASSOCIATION,
INC.

      Plaintiff,

vs.

                                CASE NO.: 2018-022154-CA-01

UNDERWRITERS AT LLOYD'S, LONDON

      Defendant.

_____/

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants, Certain Underwriters at Lloyd's, London Subscribing to Policy Number B0507XEQ3052417 (hereinafter "Underwriters"), incorrectly named in the Complaint as "Underwriters at Lloyd's, London" by and through their undersigned counsel, provide the following Answer and Affirmative Defenses to Plaintiff's Complaint. Any allegations not specifically admitted are hereby denied.

### ANSWER

1.    Admitted for jurisdictional purposes only. Otherwise, denied.

2.    Without knowledge, therefore denied.

3.    Denied. At all material times, Underwriters were members of various underwriting syndicates that are located in and have their principal place of business in London, England. At all material times, these underwriting syndicates were eligible to do business and to issue insurance policies in Florida pursuant to the Florida Surplus Lines Law.

4.    Admitted.

5.    Without knowledge, therefore denied.

PD.24464427.1

## **GENERAL ALLEGATIONS**

6.     Admitted that Underwriters issued an insurance policy, Policy No. B0507XEQ3052417 ("the Policy"), to Hammocks Community Association, Inc. ("Plaintiff") for the period from May 27, 2017 through May 27, 2018; otherwise the Policy speaks for itself and any allegations regarding the interpretation of the Policy are denied.

7.     Without knowledge; therefore denied.

8.     Denied; the Policy speaks for itself and any allegations regarding the interpretation of the Policy are denied.

9.     Admitted that Underwriters determined that some, but not all, of the damage claimed to the Subject Property as the result of the reported windstorm loss was caused by a peril covered by the Policy. Otherwise, denied.

10.    Admitted.

11.    Admitted that Underwriters determined that some, but not all, of the damage claimed to the Subject Property was the result of the reported windstorm loss and covered by the Policy and that the covered damages resulting from the reported windstorm loss were below the Policy's wind/hail deductible and, therefore, no payment was owed under the Policy. Otherwise, denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

2

PD.24464427.1

## COUNT I
## BREACH OF CONTRACT

16.    Underwriters re-state paragraphs 1 through 15 as though fully set forth herein.

17.    Admitted that an insurance contract exists; however the Policy speaks for itself and any allegations regarding the interpretation of the Policy are denied.

18.    Admitted that the Insured has paid all premiums due and owing as contemplated by the Policy; without knowledge and therefore denied as to the remainder of the allegations of this paragraph.

19.    Admitted that Underwriters determined that some, but not all, of the damage claimed to the Subject Property was the result of the reported windstorm loss and covered by the Policy and that the covered damages resulting from the reported windstorm loss were below the Policy's wind/hail deductible and, therefore, no payment was owed under the Policy. Otherwise, denied.

20.    Denied.

21.    Denied.

## DEMAND FOR TRIAL BY JURY

Plaintiff's demand for trial by jury speaks for itself.

## AFFIRMATIVE DEFENSES

Underwriters assert the following affirmative defenses to Plaintiff's Complaint:

## FIRST AFFIRMATIVE DEFENSE

The Policy contains an arbitration condition which provides that either party may demand arbitration. The Policy's Arbitration clause provides as follows:

CONDITIONS

***

**12. ARBITRATION**

3

PD:24464427.1

If the Assured and Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Assured and Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.

The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

The Policy's arbitration provision constitutes a valid and binding agreement to resolve disputes between the parties through the arbitration process. Pursuant to the Policy's arbitration provision and Florida law, once invoked, arbitration is a condition precedent to the right of an insured to maintain an action under the Policy. Underwriters believe this matter is appropriate for arbitration and reserve their right to demand arbitration pursuant to the Policy's arbitration provision.

### SECOND AFFIRMATIVE DEFENSE

The Policy may not provide coverage for some of the Plaintiff's damages. The Policy provides, in part, as follows:

**EQUINOX PROPERTY WORDING**
\* \* \*

**Excluded Causes of Loss**
**THIS POLICY DOES NOT INSURE AGAINST**

1) Wear, tear or gradual deterioration; Wet rot, dry rot or mold; Spoilage, decay or decomposition; Normal settling, shrinking or expansion in buildings, structures or foundations; Corrosion or rust; Erosion; Leakage; any other gradually occurring loss; or any loss which commenced prior to the inception of this Policy.

2) Loss or damage caused by error in design; Faulty workmanship; or Faulty or unsuitable materials. However, if Fire or Explosion results, then any loss or damage arising directly from that Fire or Explosion shall not be excluded hereunder.

To the extent that any of the Plaintiff's damages were caused by or resulted from any of the above-referenced causes of loss, the Policy does not provide coverage for such damages. Accordingly, any damages sought by Plaintiff that are caused by or resulting from these causes of loss are excluded from coverage by the Policy.

4

PD.24464427.1

WHEREFORE, based upon the foregoing, Underwriters respectfully request this Honorable Court enter judgment in their favor, that it award Underwriters their costs expended herein, and that they be awarded any such further relief in law or in equity to which they are appropriately entitled.

Dated this 4th day of September, 2018.

PHELPS DUNBAR LLP

/s/ Jonathan E. Lewerenz
Jonathan E. Lewerenz, Esq., Fla. Bar No. 84432
jonathan.lewerenz@phelps.com
100 South Ashley Drive • Suite 1900
Tampa, Florida 33602-5311
(813) 472-7550
(813) 472-7570 (FAX)
Attorneys for Defendants, Certain Underwriters
at Lloyd's, London Subscribing to Policy Number
B0507XEQ3052417

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 4, 2018, the foregoing was electronically filed using the Florida Courts E-Filing Portal, which will send a notice of electronic filing to Kaneily A. Valdes, Esq. and Anthony M. Lopez, Esq., Marin, Eljaiek, Lopez & Martinez P.L., eservice@mellawyers.com; mellaw3@mellawyers.com.

/s/ Jonathan E. Lewerenz
Attorney

6

PD.24464427.1