IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

HAMMOCKS COMMUNITY ASSOCIATION
PLAINTIFF,

vs.                                 CIVIL ACTION NO. 1:18-CV-23784-DPG

UNDERWRITERS AT LLOYD'S, LONDON,

DEFENDANTS.

_____/

## UNDERWRITERS' MOTION TO DISMISS OR ALTERNATIVELY TO STAY LITIGATION PENDING ARBITRATION AND INCORPORATED MEMORANDUM OF LAW

Defendants, Certain Underwriters at Lloyd's, London Subscribing to Certificate No. B0507XEQ3052417 (incorrectly named as Underwriters a Lloyd's, London) ("Underwriters"), by and through their undersigned counsel, hereby move to stay the litigation brought by Plaintiff, Hammocks Community Association, pending binding arbitration. Underwriters' memorandum of law in support of this motion is incorporated herein.

### FACTUAL BACKGROUND

In support of this motion, Underwriters state as follows:

1. Plaintiff alleges that Plaintiff and Underwriters are parties to Policy No. B0507XEQ3052417, which Plaintiff alleges in the Complaint was "in full force and effect." (Doc. 1-2, Complaint, ¶¶ 6, 17).

2. Plaintiff alleges that its property located at 9020 Hammocks Boulevard, Miami, FL 33196 (the "Property") was covered by Policy No. B0507XEQ3052417 ("the Policy") issued by Underwriters. *Id.* at ¶¶ 6, 8.

3. Plaintiff alleges that Underwriters breached the Policy by failing to "(i) provide coverage for the Loss under the terms of the Policy; and/or (ii) acknowledge that additional payment would be forthcoming; and/or (iii) make adequate payment of insurance proceeds to the Insured." *Id.* at ¶ 20.

4. The Policy, attached to this motion as Ex. "A," states the following with respect to such disagreements relating to any aspect of the insurance:

> **12. Arbitration**
>
> If the Assured and Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Assured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of an two, duly verified, shall determine the same.
>
> The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

*See* Ex. "A", p. 12.

5. The Policy is governed by the laws of Florida. Additionally, the Policy Service of Suit Clause (U.S.A.) endorsement provides that it "is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such arbitration provision for resolving disputes arising out of this contract of insurance (or reinsurance)." *Id.* at p. 28.

6. Underwriters invoked their right to arbitrate the matters upon which Plaintiff and Underwriters "fail to agree in whole or in part regarding any aspect of" the Policy as asserted by Plaintiff in the Complaint by letter dated September 13, 2018 to Plaintiff's counsel ("the

2

arbitration demand"). The arbitration demand is attached to this motion as Exhibit B. *See* Ex. "B." The arbitration demand identified Underwriters' selection of arbitrator.

## LAW AND ARGUMENT

### A. The Arbitration Agreement Must be Enforced.

Underwriters removed this matter to this court on the basis of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as the "Convention") (Doc. 1). The Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. As the Supreme Court has explained, "[t]he goal of the convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974). Over one hundred countries have signed the Convention, including the United States and the United Kingdom of Great Britain and Northern Ireland.

In 1970, Congress enacted Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, ("the "Convention Act") "to establish procedures for our courts to implement the Convention." *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991). The Convention Act is part of the broader Arbitration Act, 9 U.S.C. § 1 et seq. Chapter 1 of Title 9 is the Federal Arbitration Act ("FAA"). Chapter 2 of Title 9 is the Convention Act. Section 208 of the Convention Act incorporates the FAA into the Convention Act to the extent the FAA is not inconsistent with the Convention Act or the Convention. *See* 9 U.S.C. § 208.

3

The FAA applies to all arbitration agreements involving interstate commerce. The United States Supreme Court has expressed a strong presumption favoring the enforcement of arbitration provisions whenever possible. "Section 2 [of the Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 103 S.Ct. 927, 941 (1983). Further, as the Supreme Court noted, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ..." *Id.* at 941 (emphasis added).

The strong policy in favor of arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, (1985). In that case, the Court "conclude[d] that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context." *Id.*

Section 201 of Title 9 to the United States Code provides that "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States Courts in accordance with this chapter." 9 U.S.C. § 201. The Convention provides in pertinent part:

> The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

     *See* Convention, art. 2, ¶ 3, reprinted at 9 U.S.C. § 201 note, at 511.

Under these provisions, the Court's inquiry is limited to determining whether (1) an arbitration agreement exists which falls within the scope of the Convention's reach, and (2) the agreement is null and void, inoperative, or incapable of being performed. *See, e.g., Bamberger Rosenheim, Ltd. (Israel) v. OA Development, Inc.*, 862 F.3d 1284 (11th Cir. 2017); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998); *Ledee v. Ceramiche*, 684 F.2d 184, 186 (1st Cir.1982); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140 (5th Cir.1985).

  Section 202 of the Convention Act provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

  Article II of the Convention further clarifies which arbitration agreements are subject to the Convention. Article II states, in pertinent part, as follows:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

5

Here, Defendants severally subscribe to the Policy issued to Plaintiff. Pursuant to the directive found in *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010), Lloyd's itself "is not an insurance company, but rather a British organization that provides infrastructure for the international insurance market." *Id.* at 1083. It is thus not Lloyd's but rather individual underwriters operating within the Lloyd's infrastructure that underwrite policies. *See Id.* These underwriters are known as "Names" or "members," and they can be individual persons or business entities of varying nationalities. *Id.* As underwriters, they assume the risk of insurance loss, and they often share the risk for any given policy severally by working together in a "syndicate." *Id.* It has been further stated that syndicates are merely administrative entities; they are not incorporated, and they do not assume any risk on the policies they underwrite. *Id.* Rather, "the constituent Names assume individual percentages of underwriting risk" and "it is the individual Names, not the syndicate, who are directly liable in the event of loss, as if each Name had a contract with the insured," *Id.* at 1084. The syndicates instead provide administrative convenience, and they "are generally organized by Managing Agents, which may or may not be corporations." *Id.* at 1083.

In this case, a portion of the Policy is subscribed to by Syndicate 1886, which is not a citizen or resident of Florida or any other state within the United States. The sole corporate member of Syndicate 1886 is QBE Corporate Limited, which is which is organized and maintains its principal place of business in the United Kingdom of Great Britain and Northern Ireland, a participating country to the Convention. All of the Underwriters agreed to removal on the basis of the Convention Act.

Additionally, the dispute involves a commercial dispute under a written agreement that includes a valid arbitration agreement. There is nothing to suggest the agreement to arbitrate the

insurance dispute the agreement is null and void, inoperative, or incapable of being performed. Indeed, such agreements contained in insurance contracts have been enforced in this court (applying Florida law as necessary), as well as other courts around the country to have considered the issue. *See VVG Real Estate Investments LLC v. Underwriters at Lloyd's, London*, No. 18-cv-61237, 2018 WL 3722960 (S.D. Fla. 2018); *Port Cargo Service, LLC and Michoud Blvd. Commerce Center, LLC v. Certain Underwriters at Lloyd's London, et al.*, No. 18-cv-06192 (S.D. Fla. 2018); *Kong v. Allied Professionals Ins. Co.*, 2008 WL 2853677 (M.D. Fla. 2008); *Antillean Marine Shipping Corp. v. Through Transport Mut. Ins., Ltd.*, 2002 WL 32075793 (S.D. Fla. 2002); *ESAB Group v. Zurich Ins.*, 685 F.3d 376 (4th Cir. 2012); *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991); *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994); *Acosta v. Master Maintenance & Construction Inc.*, 452 F.3d 373, 376 (5th Cir. 2006); *Murphy Oil USA, Inc. v. SR Int'l Bus. Ins. Co.* (W.D. Ark. Sept. 20, 2007). Thus, there is no basis upon which to argue state law prohibits application of the Convention Act.[1]

### B. A Stay of All Issues Referable to Arbitration is Mandatory.

Section 3 of the FAA, which has residual application in Convention cases pursuant to 9 U.S.C. § 208, and 9 U.S.C. § 206, commands a federal district court to stay litigation if a party to

---

[1] Though Underwriters would disagree with the result contained therein, the case of *Stephens v. American Int'l Ins. Co.*, 66 F.3d 41 (2d Cir. 1995) is distinguishable. In *Stephens*, the applicable state's laws prohibited enforcement of an arbitration provision in an insurance agreement and, the Second Circuit concluded the Convention Act was reverse-preempted by the state law. This principle has been rejected by the United States Fifth and Fourth Circuits, as well as this court. *See Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 718 (5th Cir. 2009) (holding that the McCarran-Ferguson Act reverse-preemption rule applies only to federal statutes and not to treaties); *ESAB Group v. Zurich Ins.*, 685 F.3d 376 (4th Cir. 2012); *Antillean Marine Shipping Corp. v. Through Transport Mut. Ins., Ltd.*, 2002 WL 32075793 at *3 (S.D. Fla. 2002) ("the McCarran-Ferguson Act does not apply to international arbitration insurance contracts made under the Convention."). *See also Old Dominion Ins. Co. v. Dependable Reinsurance Co., Ltd.*, 472 So.2d 1365 (1st DCA 1985) (FAA obligated court to enforce arbitration provision even though it was not enforceable under Florida law because of the requirement arbitration be held in Bermuda); *Cf. United Ins. Co. v. Office of Insurance Regulation*, 985 So.2d 665 (1st DCA 2008) (arbitration provision in life insurance contract not governed by the Convention Act unenforceable).

the dispute demonstrates that there is an arbitration agreement in place that governs the dispute:

> If any suit . . . be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which said suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

Under the express terms of the arbitration agreement at issue here, Underwriters have the contractual right to have all disputes related to the Policy resolved by arbitration. Because Plaintiff has filed suit for benefits under the Policy and Underwriters have invoked the arbitration provision, the mandatory stay provision applies.

**C. Dismissal is Appropriate.**

When a party to a binding arbitration agreement is sued on a claim where an arbitration agreement applies, that party is entitled under the FAA to a stay of the court proceeding pending arbitration and, if necessary, an order compelling arbitration. 9 U.S.C. §§ 3, 4. If all of the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86-87 (2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (stating that the court may not deny a stay when arbitration is properly invoked, but, the weight of authority also supports dismissal of the case when all of the issues raised in the court must be submitted to arbitration).

**REQUEST FOR ORAL ARGUMENT**

Underwriters respectfully request oral argument on this motion as the issues are somewhat unique. Underwriters anticipate oral argument of two hours or less would be beneficial to the issues at hand.

**WHEREFORE**, based upon the foregoing, Underwriters respectfully request this Honorable Court to:

a) Dismiss, or alternatively to stay, Plaintiff's Complaint against Underwriters; and

b) Grant any such further relief the Court deems just and appropriate.

Respectfully submitted this 20TH day of September, 2018.

**PHELPS DUNBAR LLP**

/s/ Jonathan E. Lewerenz
Jonathan E. Lewerenz, Fla. Bar No. 0084432
jonathan.lewerenz@phelps.com
Matthew L. Litsky, Esq., Fla. Bar No. 992194
matthew.litsky@phelps.com
100 South Ashley Drive • Suite 1900
Tampa, Florida 33602-5311
(813) 472-7550 · (813) 472-7570 (FAX)
ATTORNEYS FOR DEFENDANTS, CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON
SUBSCRIBING TO CERTIFICATE NO.
B0507XEQ3052417

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 20, 2018, the foregoing was electronically filed using the Courts CM/ECF system, which will send a notice of electronic filing to all counsel of record on the Service List below.

/s/ Jonathan E. Lewerenz
Fla. Bar No. 0084432
jonathan.lewerenz@phelps.com

## SERVICE LIST

Anthony M. Lopez, Esq.
Kaneily A. Valdes, Esq.
Marin, Eljaiek, Lopez & Martinez, P.L.
2601 South Bayshore Drive, 18th Floor
Coconut Grove, Florida 33133
(305) 444-5969
(305) 444-1939 (FAX)
Eservice@mellawyers.com
Mellaw3@mellawyers.com

*Attorneys for Plaintiff*